CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 10, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Jared Ethan West, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:24-cv-00027 |
| | ) | |
| City of Charlottesville *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Jared West alleges that he was discriminated and retaliated against and eventually fired from his job as an IT specialist for the City of Charlottesville due to his epilepsy. This matter is before the court on Defendants City of Charlottesville, Steve Hawkes, and Maria Weiss's partial motion to dismiss Plaintiff's second amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 31). For the reasons stated below, the court will grant Defendants' motion to dismiss as to both counts.

## I.     Background

### A. Factual History

Plaintiff Jared Ethan West ("West") brought this employment action against Defendant City of Charlottesville ("City") and Defendants Steve Hawkes ("Hawkes") and Maria Weiss ("Weiss"), both City employees. West claims Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, when the City terminated his employment as a Technical Support Specialist following the disclosure of his epilepsy to Hawkes and Weiss. West also claims Hawkes and Weiss violated the Virginia Fraud and Abuse

Whistle Blower Protection Act ("VFAWPA"), Va. Code § 2.2-3011, by terminating his employment after he had reported violations of the ADA.  The facts are taken from West's second amended complaint and, at this stage, are presumed to be true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

West has suffered from focal epilepsy since 2018.  (Sec. Am. Compl. ¶ 10 (Dkt. 28).)  His diagnosis has impacted major life activities, including "sleeping and waking," and has led to additional diagnoses of anxiety and depression.  (*Id.* ¶ 11.)  On November 10, 2021, West began work as a Technical Support Specialist in the City of Charlottesville's Information Technology Department.  (*Id.* ¶ 12.)  West brought information technology experience to the role from a prior job with the U.S. Army and other various jobs in the field.  (*Id.* ¶ 13.)  In his role as a Technical Support Specialist, West was primarily responsible for staffing the City's Helpdesk, which fielded IT-related questions and requests from City employees.  (*Id.* ¶ 14.)  West's Helpdesk responsibilities included responding to service requests, resolving IT issues or routing them to the appropriate engineer, performing maintenance or repairs on personal computers, and documenting records of service calls.  (*Id.* ¶ 15.)

In November 2021, shortly after West was hired, the City hired Hawkes as Interim IT Director.  (*Id.* ¶ 16.)  West's immediate supervisor, Tyler Henderson ("Henderson"), joined the Department in December 2021, and Weiss was hired as IT Operations Manager in January 2022, reporting to Hawkes (*Id.* ¶¶ 17–18.)  Accordingly, Henderson, Weiss, and Hawkes were in West's supervisory chain of command.  (*Id.* ¶ 19.)  West worked with another Technical Support Specialist, Tyler Ringling ("Ringling"), who "performed the same job duties[] and

reported to the same supervision" as West.  (*Id.* ¶ 32.)   Ringling did not require an accommodation for a disability.  (*Id.*)

On December 28, 2021, West informed Hawkes that he had epilepsy, and that he had experienced a seizure at work the week prior.  (*Id.* ¶ 20–21.)  After West had another seizure at work on January 13, 2022, Henderson sent West home to work remotely "until his disability 'resolved.'"  (*Id.* ¶¶ 23–24.)  West worked remotely from January 13 to February 28, 2022.  (*Id.* ¶ 27, 47.)  He had a difficult time working remotely, since the City "failed to set up the tools [he] required." (*Id.* ¶ 28.)  For example, West was not connected to the Helpdesk for much of his first week of remote work, and other issues persisted through his time working remotely. (*Id.* ¶ 29.)  While remote, West also missed training that Ringling participated in.  (*Id.* ¶ 31.)

Within one week of West's remote work, Hawkes first notified him that West was having performance issues.  (*Id.* ¶ 33.)  West reports that he had "received no discipline" before this point and had instead received "frequent positive feedback" from Henderson before he suffered a seizure at work and disclosed his disability.  (*Id.* ¶¶ 34-35.)  He maintains that his work performance did not change before and his seizure and disclosure of his disability.  (*Id.* ¶ 36.)

On February 3, 2022, West notified Hawkes and Weiss that he needed a modified work schedule of 9:00 a.m. to 5:00 p.m. to accommodate his disability, since awakening early could cause a seizure to occur.  (*Id.* ¶¶ 37, 43–44.)  He followed up the next day with Human Resources, providing medical documentation of his diagnosis.  (*Id.* ¶ 38.)  West was put on paid suspension pending a medical note clearing him to return to work.  (*Id.* ¶ 39.)

On February 4, 2022, one day after West had made his request for a reasonable accommodation (*i.e.,* a modified work schedule), he received another reprimand from Hawkes and Weiss about his work performance. (*Id.* ¶ 40.) In response, West told Hawkes and Weiss that they were violating his rights under the ADA and requested that he be returned to in-person work. (*Id.* ¶ 41.) After few weeks clearing his medical status with Human Resources and providing documentation to support his reasonable accommodation of working from 9:00 a.m. to 5:00 p.m., West was permitted to return to work on February 28, 2022. (*Id.* ¶¶ 42, 43, 45–47.) Upon returning to the office, Hawkes communicated his performance expectations for West. (*Id.* ¶ 48.) Three days after this discussion, on or about March 4, 2022, West received another formal reprimand for his work performance from Hawkes and Weiss. (*Id.* ¶ 50.) This time, West was put on a formal performance improvement plan. (*Id.*) In response, West told Weiss and Hawkes that he was being "discriminated and retaliated against in violation of the law and the City's policies," and that the statements in the reprimand were not true. (*Id.* ¶ 51.)

Two weeks after West was put on a performance improvement plan, he returned from a medical appointment to find that he had been terminated from employment with the City. (*Id.* ¶ 54.) West seeks monetary relief for lost wages, benefits, and future job opportunities, among other losses. (*Id.* ¶ 72, 84.) He also requests, among others, that he be reinstated, be placed on the City's list of eligible employees, that the City provide no negative references as to his previous employment, that his medical records be separated from his personnel file, and that all disciplinary records be purged. (*Id.* ¶ 14.)

B. **Procedural History**

West received a Determination and Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC") on January 26, 2024. (Sec. Am. Compl. Ex. 1 at 1 (Dkt. 28-1).) He then filed his first complaint, proceeding *pro se*, in April 2024 against the City, Hawkes, Weiss, and Flora Kelly-Bertsche, a City Human Resources Coordinator. (Dkt. 1.) He amended his complaint less than one week later. (Dkt. 7.) In this amended complaint, West alleged discrimination and retaliation in violation of the ADA. (*Id.* at 5.)

In response, Defendants filed a motion to dismiss on May 23, 2024. (Dkt. 10.) The case was transferred to the undersigned on September 4, 2024, while the motion was pending. (Dkt. 17.) The court issued a memorandum opinion and order on January 21, 2025. (Dkts. 21, 22.) The court granted the motion to dismiss as to the claims against Hawkes, Kelly-Bertsche, and Weiss, the claim of discrimination brought against the City, and the claim of retaliation brought against the City to the extent West sought compensatory or punitive damages. (*Id.*) All counts alleged against Hawkes, Kelly-Bertsche, and Weiss and all counts alleged against the City seeking compensatory or punitive damages for retaliation were dismissed with prejudice. (*Id.*) The count of discrimination against the City was dismissed without prejudice. (*Id.*) The court denied the motion to dismiss as to the claim of retaliation brought against the City to the extent West sought injunctive relief. (*Id.*) The court granted West leave to amend limited to his discrimination claim against the City. (*Id.*)

West, now by counsel, filed his second amended complaint on March 12, 2025. (Sec. Am. Compl.) In his second amended complaint, West re-alleges his claim of ADA

discrimination against the City (Count I) and his claim of ADA retaliation against the city (Count II). (Sec. Am. Compl. ¶ 58–84.) He also adds a new state law claim of discrimination and retaliation against Hawkes and Weiss under Section 2.2-3011 of the Virginia Fraud and Abuse Whistle Blower Protection Act ("VFAWPA") (Count III). (*Id.* ¶ 85–92.)

In response, Defendants filed a partial motion to dismiss on April 10, 2025. (Dkt. 31.) West responded on April 24 (Pl.'s Mem. in Opp. to Def.'s Part. Mot. to Dismiss (Dkt. 37) [hereinafter "Pl.'s Resp."]) and Defendants replied on May 1 (Def.'s Reply to Pl.'s Resp. to Part. Mot. to Dismiss Sec. Am. Compl. (Dkt. 38) [hereinafter "Def.'s Reply"]). Defendants move to dismiss West's ADA discrimination claim (Count I) and his VFAWPA claim (Count III). (Def.'s Brief in Supp. Part. Mot. to Dismiss Sec. Am. Compl. (Dkt. 32) [hereinafter "Def.'s Brief"].)

## II. Standard of Review

West "is not obligated to make out a prima facie case of discrimination at the pleading stage of litigation." *Whorley v. Int'l Paper*, 620 F. Supp. 3d 434, 437 & n.2 (W.D. Va. 2022). Instead, on a motion to dismiss a claim of discrimination or retaliation, "the ordinary rules" of pleading apply. *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024)[1] (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief" (quoting Fed R. Civ. P. 8(a)(2))); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (same). West therefore "must allege facts sufficient to render all elements of his claim plausible under the

---

[1] "Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases." *Kelly v. Town of Abingdon, Va.*, 90 F.4th 158, 169 n.6 (4th Cir. 2024) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001)); *accord Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 655 n.8 (4th Cir. 2023). "Accordingly, our precedent for evaluating discrimination and retaliation claims under Title VII informs our analysis of the same theories of relief under the ADA." *Kelly*, 90 F.4th at 169 n.6.

familiar strictures of Rule 12(b)(6) review." *Whorley*, 620 F. Supp. 3d at 437 (citing *McCleary-Evans v. Md. Dep't Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616.

### III.    Analysis

**A. Count I: Discrimination under the Americans with Disabilities Act**

West brings his claim against the City for disability discrimination under Title I of the Americans with Disabilities Act ("ADA"). Title I prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employees compensation, job training, and other terms, conditions, and privileges of employment." 42 § U.S.C. 12112(a). West alleges

specifically that he was terminated because of his disability, epilepsy.[2] (Sec. Am. Compl. ¶ 58–72; Pl.'s Resp. at 7.)

To state a claim for wrongful discharge under the ADA, a plaintiff must allege that "(1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination." *Kelly*, 90 F.4th at 169. The City does not dispute that West plausibly alleged he was a qualified individual with a disability or that he was discharged. The City plainly denies West's allegation that he was fulfilling the City's legitimate expectations at the time of his discharge. (Dkt. 33 ¶ 63.) In the court's view, West ultimately fails to allege sufficient facts to establish the fourth element: that the circumstances of his discharge raise a reasonable inference of unlawful discrimination.

"To raise a reasonable inference of disability discrimination in a wrongful discharge case, the employee must allege that his disability was a 'but-for' cause of his termination." *Kelly*, 90 F.4th at 169 (citing *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235–36 (4th Cir. 2016)); *see also Bing*, 959 F.3d at 618 ("The mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias."). If a plaintiff identifies a "legitimate and nondiscriminatory reason for an employer's adverse action" and "fails to allege any other facts that support an inference of causation," it is possible for the plaintiff to "plead [him]self out of court." *Barbour*, 105

---

[2] West also alleges that he suffers from two additional disabilities, anxiety and depression. (Sec. Am. Compl. ¶ 11.) West has not alleged that these conditions independently rise to the level of a covered disability under the ADA, nor does he allege that he was terminated because of his anxiety or depression. The court will therefore consider the anxiety and depression sequelae of West's epilepsy and will not conduct a separate analysis of them.

F.4th at 599. If the court can only infer disability discrimination by "speculating as to the [employer's] motivation," dismissal of the claim is appropriate. *Kelly*, 90 F.4th at 171.

To support his causation theory, West argues that his supervisor made a discriminatory statement twelve weeks before his termination, that he was "set up for failure" after disclosing his disability, that his reprimands for poor job performance were "false," and that even if they were true, they would not "substantiate" his termination, since he was held to higher standards than his colleague. (*See* Pl.'s Resp. at 10–14.) None of these arguments, even considered together, raise the reasonable inference that West was terminated *because of* his disability.

West alleges that after having his second seizure at work, his supervisor Henderson sent him home "to work remotely until his disability had 'resolved.'" (*See* Sec. Am. Compl. ¶ 21, 23–24.) West characterizes this instruction as an "impossible and discriminatory directive," since epilepsy is a permanent disability. (Pl.'s Resp. at 10.) But West does not allege any more facts regarding Henderson's intent or meaning behind these instructions. The court is not able to find an inference of discriminatory intent on this one statement alone. West does not allege any additional context or evidence that Henderson's statement was anything more than an instruction to work remotely until West felt that his symptoms were sufficiently under control to return to office work.

West next alleges that his reprimands for poor job performance were "false" and "pretextual." (*See, e.g.*, Sec. Am. Compl. ¶¶ 33, 50, 51, 56.) In support, he only claims that Weiss admitted in a grievance hearing that "statements in the reprimand were false." (*Id.* ¶ 52.) West does not specify which "statements" were false. Even taking this allegation as true under the generous Rule 12(b)(6) standard, the court does not find that West contends that

*every* complaint of poor job performance by the City was false. Weiss' alleged admission that some statements in one of the reprimands were false does not nullify the fact that West has, through his pleadings, identified a non-discriminatory reason for his termination: his poor job performance. West does not plead any facts to suggest his job performance was satisfactory leading up to his termination. His only support for his satisfactory performance, "frequent positive feedback from his supervis[or]," was communicated *before* West was formally reprimanded and put on a performance improvement plan. (*See id.* ¶¶ 65, 24.) So, although West's termination came after the disclosure of his disability, it also came after the City formally communicated their concerns about his job performance. Even if some of the formal complaints were false, that West "may have been innocent of [those] offense[s] does not alone give rise to a plausible inference that the stated reason was pretext for unlawful discrimination." *Whorley*, 620 F. Supp. 3d at 439. The court therefore finds that West has not pled sufficient facts to suggest that the City was "motivated by his disability" in offering a false reason for his termination. *Kelly*, 90 F.4th at 170. West's conclusory statements about the falsity of his reprimands are not sufficient to establish causation.

West argues that even if complaints about his job performance were true, they would not "substantiate" his termination, since he was held to higher standards than his colleague, Ringling. (*See* Sec. Am. Compl. ¶ 57, 67.) West "is not required to identify a similarly situated [] comparator to prove [his] discrimination claim" against the City to survive a motion to dismiss; however, if he wants "to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination . . . [t]he similarity between comparators . . . must be clearly established in order to be meaningful." *Swaso v. Onslow Cnty.*

*Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (internal quotation omitted). That is, West must plead "that [he is] similar in all relevant respects to [his] comparator," *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), which might include allegations that the employees "dealt with the same supervisor, were subject to the same standards and engaged in the same conduct." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting *Haywood*, 387 F. App'x at 359) (cleaned up).

Ringling is not a valid comparator here. West sufficiently alleges that he and Ringling shared a job title and supervisor, but he does not allege that Ringling engaged in the same conduct (*i.e.*, poor job performance) that the City identified as the main reason for West's termination. West's comparisons to Ringling therefore fall short of establishing an inference of unlawful discrimination based on West's disability.

West heavily relies on *Bounds v. Town of Red Springs* in arguing that he has sufficiently plead causation. No. 5:20-cv-601-FL, 2022 WL 19718 (E.D.N.C. Jan. 3, 2022); (*see* Pl.'s Resp. at 7–10.) The plaintiff in *Bounds* was a water treatment plant operator who needed to use an ostomy bag to collect bodily waste after undergoing cancer treatment. *Bounds*, 2022 WL 19718, at *1. When Bounds returned from FMLA leave, his second-level supervisor told him that the smell from the ostomy bag was bothering his coworkers, and that he would be terminated if he did not fix the smell. *Id.* In a subsequent meeting, Bounds' direct supervisor told him that the same second-level supervisor had wanted to terminate him during his medical leave because he was a "liability." *Id.* Bounds was then instructed by his direct supervisor to switch job duties with a coworker, giving him a less physically demanding role. *Id.* He was later written up twice for switching job responsibilities, while his coworker who switched with him

was not written up for the same switch. *Id.* at *1–2. Bounds' second-level supervisor then informed him that he could either resign or be terminated. *Id.* at *2. In the direct lead up to that final conversation, Bounds' direct supervisor told him he was satisfied with his work performance. *Id.*

The court in *Bounds* found that "the reasonable inference arising from the facts alleged in the complaint is that plaintiff's disability was at the forefront of the relevant decisionmakers' minds and was viewed as a negative characteristic." 2022 WL 19718, at *3. The court pointed first to Plaintiff's supervisor calling him a "liability" and threatening to terminate him if he did not "fix" the smell coming from his ostomy bag, and second to the fact that Bounds was disciplined for switching job responsibilities, while his non-disabled colleague was not disciplined for the switch. *Id.* West alleges his case "is very similar to *Bounds*," while the City argues that West's allegations are "nothing like the allegations in *Bounds*." (Pl.'s Resp. at 8; Def.'s Reply at 4.) West's reliance on *Bounds* is inapposite.

First, unlike the plaintiff in *Bounds*, West does not allege any fact that would raise an inference that anyone at the City was bothered by his disability, including his supervisors. Nor does West allege any statements made by his supervisors that could be construed, even generously, to be analogous to Bounds' supervisor calling him a "liability." The *only* comment that West alleges was made about his disability is Henderson's comment that West should take time to work remotely while he "resolved" his condition. (*See* Sec. Am. Compl. ¶ 24.) As explained above, the court does not believe this lone comment raises an inference of discriminatory intent. West also fails to allege any fact that indicates any City employees believed he could not perform his job duties because of his disability. Finally, unlike in *Bounds*,

where Plaintiff was explicitly told that he would be terminated if he did not "fix" the smell of his ostomy bag, West does not allege that any supervisor threatened an adverse employment action in connection with his disability.

The comparator evidence in *Bounds* is also distinguishable from this case. West does not allege any facts showing that Ringling was treated differently for engaging in the same conduct. While West and Ringling had the same job title, West does not allege specific conduct that they both performed beyond having the same general "job duties." (*Id.* ¶ 32.) West fails to allege that he was terminated for conduct that Ringling, who is not disabled, also engaged in. This case is distinguishable from *Bounds*, where the disabled plaintiff engaged in the exact same conduct—switching job responsibilities—as his non-disabled coworker, and only plaintiff was written up for that same conduct. West's reliance on *Bounds* therefore does not persuade the court that West's disability was the but-for cause of his termination.

Finally, West argues that a 12-week window between disclosure of his disability to his supervisors and his termination in March 2022 supports his ADA discrimination claim. (*See id.* ¶ 66.) In doing so, West appears to conflate the role of temporal proximity in ADA retaliation claims with its role in ADA discrimination claims. The causation element of an ADA *retaliation* claim can be proven by "show[ing] that the adverse act bears sufficient temporal proximity to the protected activity." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022) (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)); *see Kelly*, 90 F.4th at 170 ("In retaliation cases, temporal proximity suggests a correlation between an employee's protected action and his employer's adverse reaction."). However, to sufficiently allege causation for a *discrimination* claim, a plaintiff alleging temporal proximity that could be

"potentially consistent with disability discrimination," must still "connect the dots" between his disability and the adverse action. *See Kelly*, 90 F.4th at 170 (internal quotation omitted). As explained above, West does not allege sufficient facts to suggest that the City terminated him because of his disability. Without "connect[ing] the dots," West's allegation of a 12-week window between the disclosure of his disability and his termination does not give the court enough to infer causation.

Finally, West's complaint lacks the factual allegations to support an inference that the City was "motivated by his disability" in terminating him. *Id.* at 171. Because West does not plausibly allege facts surrounding his termination to raise a reasonable inference of unlawful discrimination based on his disability, the court finds that West fails to raise a claim upon which relief can be granted. The court will dismiss West's ADA disability discrimination claim against the City.

**B. Count III: Virginia Fraud and Abuse Whistle Blower Protection Act**

West also brings a state law claim of discrimination and retaliation against Hawkes and Weiss under Section 2.2-3011 of the Virginia Fraud and Abuse Whistle Blower Protection Act. Va. Code Ann. § 2.2-3011. Section 2.2-3011(A) provides that "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower."

The court first notes that West does not have leave from this court, as required by Fed. R. Civ. P. 15(a)(2), to add this claim to his second amended complaint. In this court's January 2025 order, the court dismissed with prejudice "all counts alleged against" Hawkes and Weiss. (Dkt. 22.) The court granted West leave to amend his complaint "limited to the discrimination claim against the City of Charlottesville." (*Id.*) West therefore does not have leave to add an

additional claim to his second amended complaint, and the court will accordingly dismiss this claim.

It is not necessary to analyze West's claim under the VFAWPA any further. But even if West had leave to add the VFAWPA claim to his second amended complaint, the court would still dismiss this claim, as West fails to state a VFAWPA claim against Hawkes and Weiss.

To state a claim under Va. Code § 2.2-3011, a plaintiff must allege that his employer "discharged, threatened, discriminated, or retaliated against him *for* being a whistle blower. *Morrison v. George Mason Univ.*, No. 1728-24-4, 2025 WL 2832119, at *4 (Va. Ct. App. Oct. 7, 2025) (emphasis added). It is not clear whether, to state a claim, a plaintiff must show that the retaliation is the exclusive reason for discharge or just one of the reasons for discharge. *Carmack v. Virginia*, 837 F. App'x 178, 183 (4th Cir. 2020); *but see Moschetti v. Off. Inspector Gen.*, 758 F. Supp. 3d 533, 548 (E.D. Va. Nov. 26, 2024) (explaining that the statute requires that the "exclusive reason" for firing plaintiff must be "to retaliate against [their] whistleblowing"). Either way, West's only related allegation, that his termination was "[i]n response to his protected reports," is threadbare and wholly conclusory. (Sec. Am. Compl. ¶ 91.) He fails to allege a single fact supporting an inference that he was terminated *because* of his whistleblowing activity, or that the complaints themselves were at all a motivating factor in his discharge.

The purpose of the VFAWPA is to allow "citizens of the Commonwealth and employees of governmental agencies [to] be freely able to report instances of wrongdoing or abuse committed by governmental agencies or independent contractors of governmental agencies." Va. Code. Ann. § 2.2-3009. The purpose of the VFAWPA is not, however, to

allow a plaintiff to plead a backdoor disability claim by characterizing an ADA-related complaint to a supervisor as whistleblowing activity. Even if West had leave from the court to add this claim, and even if Hawkes and Weiss were proper defendants under the VFAWPA,[3] West fails to state a claim against them. The court will dismiss Count III.

## IV.   Conclusion

For the foregoing reasons, the court will **GRANT** Defendants' partial motion to dismiss (Dkt. 31). Count I will be dismissed with prejudice because Plaintiff failed to remedy those deficiencies in his amended complaint, despite having had the opportunity to do so. Count III will be dismissed because Plaintiff did not have leave from the court to add new claims.

An appropriate Order will issue.

**ENTERED** this 10th day of November, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

---

[3] The parties have also briefed the issues of whether Hawkes and Weiss are proper defendants under the VFAWPA and whether Hawkes and Weiss enjoy derivative sovereign immunity as employees of the City. (*See, e.g.*, Def.'s Brief at 10–15; Pl.'s Resp. at 15–19.) In light of the dismissal of West's VFAWPA claim on other grounds, the court does not reach these issues.